IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Cindy Carter, ) | |
| ) | |
|       Plaintiff, ) | |
| ) | Civil Action No. 9:24-527-BHH |
| v. ) | |
| ) | **ORDER** |
| Beaufort County, ) | |
| ) | |
|       Defendant. ) | |
| _____ ) | |

This matter is before the Court upon Plaintiff Cindy Carter's ("Plaintiff" or "Carter") complaint alleging the following causes of action against her former employer: (1) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and (2) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA").  (ECF No. 1-1.)  On July 24, 2024, Defendant Beaufort County ("Defendant") filed a motion for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B) (D.S.C.).  On November 8, 2024, the Magistrate Judge filed a report and recommendation ("Report"), outlining the issues and recommending that the Court grant Defendant's motion and dismiss with prejudice Plaintiff's Title VII retaliation claim. (ECF No. 18.)  Plaintiff filed objections to the Magistrate Judge's Report; Defendant filed a reply; and the matter is ripe for review.  (ECF Nos. 24, 25.)  For the reasons set forth herein, the Court overrules Plaintiff's objections and adopts the Magistrate Judge's Report.

## **BACKGROUND**

Plaintiff was born in 1958 and was highly qualified for her job with prior experience in solid waste and recycling management. (ECF No. 1-1 at ¶¶ 6-8.) Plaintiff began her employment with Defendant Beaufort County on August 4, 2014, as an Information Coordinator and Data Analyst. (*Id.* ¶ 9.) Plaintiff was promoted during her employment, and her last position was the Solid Waste and Recycling ("SW&R") Director. (*Id.* ¶ 10.) Plaintiff's work performance was excellent. (*Id.* ¶ 11.)

Plaintiff had ben SW&R Director for one year when Defendant hired Victoria Hoffman ("Hoffman") on or about March 22, 2021, and Hoffman reported to Plaintiff. (*Id.* ¶¶ 13, 15.) Hoffman's background was in geology, but she had done some internship work with recycling. (*Id.*) Initially, Hoffman was housed in the SW&R trailer in Beaufort, while Plaintiff's office was in Bluffton. (*Id.*)

On April 9, 2021, Dave Wilhelm ("Wilhelm") became Capital Projects Director. (*Id.* ¶ 14.) Both Wilhelm and Plaintiff reported to Assistant County Administrator Jared Fralix ("Fralix"). (*Id.* ¶¶ 13-14.)

Plaintiff asserts that during her employment, she opposed what she described as a "quid pro quo relationship" between Hoffman and Wilhelm. (*Id.* ¶ 12.) Plaintiff does not know the extent of any sexual or romantic relationship, but Plaintiff personally observed that they were spending a "bizarrely high amount of time together" and that Wilhelm was engaging in a concerted effort to advance Hoffman's career, seemingly at the request of, or with the encouragement of, Hoffman, and Plaintiff sets forth a number of allegations regarding Wilhelm and Hoffman. (*Id.* ¶¶ 15-23.) According to Plaintiff, she was concerned about the relationship between Hoffman and Wilhelm and "reported program disruption to

Fralix during several one-on-one meetings." (*Id.* ¶ 24.) Also according to Plaintiff, she advised Fralix that Wilhelm was meddling in the program and providing inappropriately favorable treatment to Hoffman. (*Id.* ¶ 25.)

A reorganization was announced on March 1, 2022, and a new position was posted in Public Works for a Deputy Director. (*Id.* ¶ 26.) Wilhelm was the only applicant, and he accepted the position on or around May 9, 2022. (*Id.*) Another position was soon announced for Public Works Special Projects Coordinator, and Hoffman applied and was promoted into the position. (*Id.*) Plaintiff asserts that although she was Hoffman's supervisor, she was not informed that Hoffman had applied for the job or was being considered for it until after Hoffman was promoted. (*Id.*) Plaintiff also asserts that she had previously inquired about the position but was told that it required the employee to be an engineer. (*Id.*) Hoffman is not an engineer, and Plaintiff asserts that once Hoffman applied, the engineer requirement was removed. (*Id.*)

According to Plaintiff, Hoffman advanced in her career in a way Plaintiff viewed as some level of quid pro quo with male managers, particularly Wilhelm, and Plaintiff asserts that after her termination, Hoffman was assigned the bulk of her job duties, such that it was "obvious to Plaintiff that Hoffman was working with male managers to angle for Plaintiff's job." (*Id.*)

On February 1, 2023, Plaintiff overheard a conversation between Business Manager Angel Marcinkoski ("Marcinkoski") and the Solid Waste Recycling Manager Randy Boehme ("Boehme"), which made Plaintiff inquire about the future of her employment. (*Id.* ¶ 28.) Plaintiff alleges that "[s]everal things were said that seemed odd about the need to 'lay low' because 'there are big changes coming in two weeks.'" (*Id.*)

On February 13, 2023, Plaintiff met with Katherine Mead ("Mead"), Defendant's Human Resources Director. (*Id.* ¶ 29.) Plaintiff had asked to meet with Mead to discuss her concerns stemming from the conversation she overheard on February 1, 2023. (*Id.*) During the meeting, Mead informed Plaintiff that another Beaufort County employee had made a complaint against Plaintiff, alleging that Plaintiff had advised a staff member to Google that employee. (*Id.* ¶ 30.) "Plaintiff confirmed that she did recall suggesting a Google search, but Plaintiff was unsure whom she said it to." (*Id.*) Plaintiff alleges that she had read a 2014 news article about fellow employee Matthew Rausch's arrest on criminal domestic violence charges, and she was concerned he was a danger to women in the workplace. (*Id.*) Plaintiff further alleges that she "cannot remember the person she spoke with about it, but she intended it to be a Title VII protected activity on her part and the person who Plaintiff was speaking could read the article and do what research they needed to make their own conclusions." (*Id.*) According to Plaintiff, "Rausch's complaint against Plaintiff for telling someone that they can Google his name is baseless and retaliatory," and she claims that Defendant's termination of her thereafter was in violation of her rights for opposing an unsafe workplace for women. (*Id.*)

Plaintiff alleges that she "engaged in Title VII protected activities with Human Resources on February 13, 2023[,] when Plaintiff responded to this baseless complaint from Rausch (or someone on his behalf) and by expressing that Plaintiff felt Rausch created an unsafe workplace for women." (*Id.* ¶ 31.) She further alleges that "Mead told Plaintiff that telling staff they could Google another County employee was gossiping and that was not a leadership trait moving forward." (*Id.*) Plaintiff further alleges that Mead told her "we take these things seriously" and "we are going to act swiftly," and Plaintiff feared

for her job.  (*Id.*)

Ten days later, on February 23, 2023, Mead terminated Plaintiff.  (*Id.* ¶ 32.) Following Plaintiff's termination, three younger participants of the Emerging Leaders program assumed multiple management positions that covered many of Plaintiff's duties. (*Id.* ¶ 33.)  Plaintiff was 64 years old at the time of her termination, and all of the individuals acquiring her duties were in their 30's.  Plaintiff contends that none of them had knowledge or experience to handle the duties and that Hoffman, who is less qualified than Plaintiff, also has taken over some duties Plaintiff was performing prior to her termination.  (*Id.*) According to Plaintiff, she was dismissed because of her age and was replaced with younger individuals.

## **STANDARDS OF REVIEW**

**I.    The Magistrate Judge's Report**

The Magistrate Judge makes only a recommendation to the Court.  The recommendation has no presumptive weight, and the responsibility for making the final determination remains with the Court.  *Mathews v. Weber*, 423 US. 261, 269 (1976).  The Court reviews de novo those portions of the Report to which a specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

**II.    Rule 12(c)**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Ultimately, "a defendant may not prevail on a motion for judgment on the

pleadings if there are pleadings that, if proved, would permit recovery for the plaintiff." *BET Plant Servs., Inc. v. W.D. Robinson Elec. Co.*, 941 F. Supp. 54, 55 (D.S.C. 1996).

"[A] Rule 12(c) motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." *Deutsche Bank Nat'l Trust Co. v. IRS*, 361 F. App'x 527, 529 (4th Cir. 2010); *see Burbach Broad. Co. v. Elkins Radio*, 278 F.3d 401, 405 (4th Cir. 2002). Thus, to survive a motion for judgment on the pleadings, the complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing the complaint, the court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). However, the Court "need not accept allegations that 'contradict matters properly subject to judicial notice or [by] exhibit.' " *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006).

## **DISCUSSION**

In its motion for partial judgment on the pleadings as to Plaintiff's Title VII retaliation claim, Defendant asserts that Plaintiff's claim fails as a matter of law because she did not engage in opposition activity protected by Title VII. (ECF No. 11-1.) Specifically, Defendant asserts that Plaintiff's alleged opposition of a quid pro quo relationship "is not protected activity because neither Hoffman's alleged, unsubstantiated conduct, nor that of the male supervisors, violates Title VII." (*Id.* at 5.) And Defendant contends that Plaintiff could not reasonably have believed otherwise. Additionally, Defendant asserts that Plaintiff telling a co-worker to Google Rausch and telling the Human Resources Director that she

had done so does not constitute protected activity because Plaintiff cannot show that she was opposing an unlawful employment practice under Title VII. (*Id.* at 8.)

After review, the Magistrate Judge agreed with Defendant and issued a Report outlining the applicable law and recommending that the Court grant Defendant's motion. (ECF No. 18.)

In her objections to the Report, Plaintiff asserts that the Magistrate Judge erred by finding that all three of her alleged protected activities fail as a matter of law: (1) opposing an unsafe workplace for women created by Rausch; (2) opposing the quid pro quo relationship between Hoffman and male managers; and (3) reporting her protected activities to the Human Resources Director on February 13, 2023. (ECF No. 24.)

Specifically, as to the Magistrate Judge's finding that Plaintiff did not engage in protected activity when she opposed an unsafe workplace created by Rausch, Plaintiff contends that the Magistrate Judge's analysis "disregards the purpose of the opposition clause of Title VII, which protects employees who oppose conduct they reasonably and in good faith believe violates Title VII." (*Id.* at 3.) According to Plaintiff, the Report's erroneous conclusion that no reasonable person could believe that Rausch's employment violated Title VII impermissibly narrows the scope of Title VII's protections. (*Id.*)

After *de novo* review, the Court finds Plaintiff's objection unavailing. As the Magistrate Judge properly pointed out, nowhere in her complaint does Plaintiff make any factual allegations regarding incidents involving Rausch in the workplace; nor does she allege that he was even convicted of the alleged crime. Furthermore, the arrest referenced in the news article that Plaintiff points to is from roughly a decade before her termination, and she does not allege any additional arrests or conduct occurring since that arrest. As

the Magistrate Judge explained, the fact of an arrest does not establish guilt, and the Court agrees with the Magistrate Judge that no reasonable person could believe that Beaufort County's mere employment of someone who was accused of a crime nearly a decade earlier constituted a violation of Title VII to which Plaintiff could reasonably object. Furthermore, because Plaintiff only asserts that she believed Rausch's presence in the workplace *could* contribute to a hostile work environment, the Court finds that Plaintiff's activity simply does not constitute protected activity under Title VII. *See Jordan v. Alternative Res. Corp.*, 467 F.3d 378, 379 (4th Cir. 2006) ("[T]he law has never protected employees in connection with their complaints about potential or future violations that they feared might occur.")

Plaintiff next objects that the Magistrate Judge erred in finding that Plaintiff's communications to the Human Resources Director on February 13, 2023, are not opposition activities. According to Plaintiff, even in the Court finds that Plaintiff's statements to a coworker about Rausch do not constitute Title VII protected activity, the Court still should conclude that Plaintiff's communications with Human Resources on February 13, 2023, do constitute protected activity because Title VII broadly protects employees who oppose workplace conduct they reasonably and in good faith believe violates the statute. (ECF No. 24 at 5.) Plaintiff asserts that such opposition activity includes informal complaints, and she contends that reporting her concerns to Human Resources regarding the alleged unsafe environment for women created by Rausch aligns with Title VII's objectives. Plaintiff also asserts that the Magistrate Judge failed to consider the [temporal] connection between Plaintiff's alleged protected activity on February 13, 2023, and her termination ten days later. (*Id.* at 6.)

Here again, after *de novo* review, the Court finds Plaintiff's objection unavailing, and the Court agrees with the Magistrate Judge that Plaintiff's conduct related to Rausch is not sufficient as a matter of law to demonstrate that she engaged in protected activity. As the Magistrate Judge properly concluded, and as noted above, no reasonable person could believe that the County's mere employment of an individual like Rausch, who had been accused of a crime nearly a decade earlier, constituted an employment action that was unlawful under Title VII, to which Plaintiff could reasonably object. Furthermore, by her own allegations, Plaintiff was opposing what she believed *could be the potential* for an unlawful employment practice, but she does not include any other allegations or incidents regarding Rausch's actual conduct in the workplace to support an actual hostile work environment. (*See, e.g.*, ECF No. 24 at 7 ("Plaintiff was concerned that he would have other violent outbursts toward women in the workplace if events were triggering toward him.")). Thus, the Court fully agrees with the Magistrate Judge that Plaintiff's comments to Human Resources, even though temporally close in time to her termination, simply do not constitute protected activity to support a retaliation claim, and Plaintiff's objections do not point to any cases that lead this Court to conclude otherwise. Accordingly, the Court overrules Plaintiff's objection.

Next, Plaintiff objects that the Magistrate Judge erred in finding that Plaintiff did not engage in protected activity when she vocalized concerns about the relationship between Hoffman and Wilhelm. (ECF No. 24 at 10.) According to Plaintiff, voicing her concerns about the relationship between Hoffman and Wilhelm was protected activity "because Plaintiff was opposing the way that Ms. Hoffman was being treated in comparison to other employees based on sex." (*Id.* at 11.) Plaintiff asserts that the Magistrate Judge

9

incorrectly applied the Fourth Circuit case of *Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 723 (4th Cir. 2002), because that case involved a motion for summary judgment and not a Rule 12 motion.  Additionally, Plaintiff asserts that the Magistrate Judge erred by applying the "paramour preference" theory to preclude Title VII retaliation claims.  (*Id.* at 13.)  According to Plaintiff, the paramour preference theory application is different for Title VII sex discrimination and Title VII retaliation claims, and she contends that the pleadings here allege sufficient facts for her retaliation claim to proceed.

After *de novo* review, the Court finds no merit to Plaintiff's objection.  As the Magistrate Judge properly explained, by Plaintiff's own allegations, Hoffman was not the *victim* of harassment, and Plaintiff's alleged opposition to a consensual relationship between Hoffman and Wilhelm simply does not constitute opposition to an activity that violates Title VII.  *See Holder v. City of Raleigh*, 867 F.2d 823, 825-26 (4th Cir. 1989) ("To hold that favoritism toward friends and relatives is per se violative of Title VII would be, in effect, to rewrite federal law."); *Jones v. Cecil Cnty., Maryland*, No. CV RDB-23-2076, 2024 WL 1329269, at *4 (D. Md. Mar. 28, 2024) ("However unfair the payment practices may be, favoritism towards family and friends is not an actionable violation without the existence of improper discriminatory intent—even if there were a sexual relationship."); *Scott v. Cnty. of Orangeburg*, No. 5:07-3571-MBS, 2009 WL 2970145, at *12 (D.S.C. Sept. 14, 2009) ("An adverse employment decision motivated by a non-merit based reason—such as friendship, nepotism, or romantic relationship—is not protected under Title VII."); *Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996) (holding that "an employer who promotes his lover or paramour, or otherwise accords the lover or paramour preferential treatment, . . . does not violate Title VII"); and *Doyle v. Advanced Fraud Sols., LLC*, No. 1:18CV885, 2020

WL 1305162, at *3 (M.D.N.C. Mar. 19, 2020) (granting motion to dismiss retaliation claim).

Here, after careful consideration of Plaintiff's complaint, the Court fully agrees with the Magistrate Judge that Plaintiff's allegations related to her opposition to alleged favoritism towards Hoffman (based on Hoffman's alleged quid pro quo relationship with Wilhelm and other male supervisors) do not plausibly allege, as a matter of law, that she opposed employment action that is actually unlawful under Title VII.  Furthermore, the Court finds that nothing in Plaintiff's objections supports a contrary conclusion. Accordingly, Plaintiff's objections are overruled.

## CONCLUSION

Based on the foregoing, the Court adopts and specifically incorporates the Magistrate Judge's Report (ECF No. 18); the Court overrules Plaintiff's objections (ECF No. 24); and the Court grants Defendant's motion for partial judgment on the pleadings (ECF No. 11) and dismisses Plaintiff's Title VII retaliation claim with prejudice.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

March 10, 2025
Charleston, South Carolina